John P. Aldrich, Esq.
Nevada Bar No. 6877
Catherine Hernandez, Esq.
Nevada Bar No. 8410
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV  89117
Tel (702) 853-5490
Fax (702) 227-1975
jaldrich@aldrichlawfirm.com

Ashish Mahendru *(pro hac to be submitted)*
Darren A. Braun *(pro hac to be submitted)*
**MAHENDRU, P.C.**
639 Heights Blvd.
Houston, Texas  77007
Telephone: 713-571-1519
Facsimile: 713-651-0776
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RB PRODUCTS, INC., | Civil Action No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| RYZE CAPITAL, L.L.C.; ENCORE DEC, L.L.C.; RYZE RENEWABLES RENO, L.L.C.; RYZE RENEWABLES, L.L.C.; MICHAEL BROWN; CHRIS DANCY; RESC, L.L.C.; RYZE RENEWABLES LAS VEGAS, L.L.C.; MATT PEARSON; AND RANDY SOULE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff RB Products, Inc. ("RB Products") files this Complaint against Ryze Capital,

L.L.C., Encore DEC, L.L.C., Ryze Renewables, L.L.C., Ryze Renewables Reno, L.L.C., RESC,

L.L.C., Michael Brown, Chris Dancy, Ryze Renewables Las Vegas, L.L.C., Matt Pearson, and Randy Soule, and allege as follows:

## I.

## PRELIMINARY MATTERS

1.     RB Products, Inc. is a Texas corporation with its principal place of business in Harris County, Texas.

2.     Defendant Ryze Capital Partners, L.L.C. is a Wyoming limited liability company with its principal place of business in California.  It may be served with process via its registered agent, Wyoming Corporation Service, Inc., 1005 Country Club Ave, Cheyenne, WY 82001.

3.     Defendant Encore DEC, L.L.C. is a Nevada limited liability company with its principal place of business in Nevada.  It may be served with process via its registered agent, Maupin, Cox, & Legoy, P.C., 4785 Caughlin Parkway, Reno, NV 89520.  Upon information and belief, its sole member is Randy Soule.

4.     Defendant RESC, L.L.C. is a Nevada limited liability company with its principal place of business in Nevada.  It may be served with process via its registered agent, Randall Soule, 16640 Wedge Parkway, Reno, NV 89511.

5.     Defendant Ryze Renewables Las Vegas, L.L.C. is a Delaware limited liability company with its principal place of business in Nevada.  It may be served with process via its registered agent, Cogency Global, Inc., at 321 W. Winnie Lane, #104, Carson City, NV 89703. Upon information and belief, its sole member is Ryze Renewables, L.L.C.

6.     Defendant Ryze Renewables Reno, L.L.C. is a Delaware limited liability company with its principal place of business in Nevada.  It may be served with process via its registered agent, Cogency Global, Inc., at 321 W. Winnie Lane, #104, Carson City, NV 89703. Upon information and belief, its sole member is Ryze Renewables, L.L.C.

7.     Defendant Ryze Renewables, L.L.C. is a Delaware limited liability company with its principal place of business in Nevada.  It may be served with process via its registered agent, Cogency Global, Inc., at 321 W. Winnie Lane, #104, Carson City, NV 89703.  Upon information and belief, its members are Ryze Capital, L.L.C., and RESC, L.L.C.

8.     Randy Soule is an individual citizen of the State of Nevada and may be served with process at 16640 Wedge Parkway, Reno, NV 89511.

9.     Matt Pearson, Chris Dancy, and Michael Brown are all individual citizens of California.  They may be served with process at their place of employment, Ryze Capital Partners, L.L.C., at 20 Pacifica, Suite 1010, Irvine, California 92618.

10.    This Court has federal-question jurisdiction over this case because RB Products asserts a claim for relief under the Federal Defend Trade Secrets Act, 18 U.S.C. §1836.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

11.    This Court has both general and specific personal jurisdiction over Ryze Renewables, L.L.C., Ryze Renewables Reno, L.L.C., Ryze Renewables Las Vegas, L.L.C., Encore DEC, L.L.C., and  RESC, L.L.C. because each of these entities has its principal place of business in Nevada, and because Plaintiff's claims in this lawsuit arise out of these entities' contacts with Nevada.

12.    This Court has general jurisdiction over Randy Soule because he is an individual resident of Nevada.

13.    This Court has specific jurisdiction over Ryze Capital, Michael Brown, Matt Pearson, and Chris Dancy because each of those Defendants has sufficient minimum contacts with Nevada and because Plaintiff's claims in this lawsuit arise from those contracts.  Pearson, Brown, and Dancy, all of whom are employees of Ryze Capital, traveled numerous times to Nevada in connection with the development of Ryze Renewables, Ryze Renewables Reno, and

Ryze Renewables Las Vegas, and made numerous communications to entities in Nevada that contained RB Products confidential and trade-secret information.  Pearson is also the managing director of Ryze Renewables Reno, L.L.C. and, upon information and belief, is also the managing director of Ryze Renewables, L.L.C. and Ryze Renewables Las Vegas, L.L.C.  Upon information and belief, both Brown and Dancy are also principals of Ryze Renewables, L.L.C., Ryze Renewables Reno, L.L.C., and Ryze Renewables Las Vegas, L.L.C.  As principals of these entities, and as further established below, Brown, Dancy, and Pearson caused these entities to use RB Products trade-secret secret information in Nevada.

14.     RB Products requests a trial by jury on all issues and claims and pays the appropriate fee.

## II.

## FACTS

15.     RB Products is a Houston, Texas-area company that specializes in the processing, trading, and distribution of petrochemicals, specialty chemicals, and other oil-related products. RB Products also owns and operates specialized equipment – a Hydrogenation Unit – that enables RB Products to hydrogenate hydrocarbons.

16.     One of RB Products' advertised specialties is the production of hydrogen-derived renewable diesel ("HDRD"), a "green" diesel fuel that meets the same standards as petroleum-based diesel but that is made with renewable feedstock such as soybean oil and distillers corn oil. In 2014, RB Products underwent the rigorous process to become certified by the United States Environmental Protection Agency ("EPA") under CFR 79.13(g) and CFR 80 to manufacture, process, and market renewable HDRD.

17.     The production of HDRDs is a valuable business model because HDRDs provide manufacturers with three streams of revenue.  First, like any other fuel, HDRDs can be sold directly to end-users or to other oil and gas companies for further blending.  Second, HDRD

manufacturers – like other biodiesel manufacturers – receive 1.7 renewable identification numbers ("RINs")[1] from the EPA for each gallon of HDRD produced.  These valuable RINs can then be sold to other oil and gas companies to enable those companies to meet their EPA-mandated renewable-fuel quotas.  Finally, the manufacture of HDRDs also generates tax credits that, like RINs, can be sold to other entities.

18.     HDRDs are also more valuable than traditional biodiesel fuels because HDRDs are considered "drop in" diesel fuels – meaning, HDRDs are almost molecularly identical to regular diesel and can be utilized in place of it without modifications to existing equipment or infrastructure.  Biodiesel, on the other hand, is functionally similar – but not chemically similar – to regular diesel fuel, and may require modifications to equipment or infrastructure in order to be used.

19.     And unlike biodiesels – which have been around for many years – HDRDs are still an emerging technology and the information concerning the manufacture of HDRDs, including the process for qualifying for tax credits and RINs associated with HDRDs, is not generally available or known to the public, and certainly was not generally available or known to the public in the 2015/2016 timeframe.

**A.     Ryze Capital Hires RB Products as a Subject-Matter Expert Regarding Ryze Capital's Contemplated Investment into a Gas-to-Liquids Facility in Port Arthur, Texas.**

20.     In or around October/November 2015, RB Products was approached by Ryze Capital, a California-based, private equity group that was looking to invest substantial money

---

[1] The concept of RINs was created pursuant to the Renewable Fuel Standard Program, a program the EPA created in response to the Energy Policy Act of 2005 that authorized the EPA to set annual quotas dictating what percentage of the total amount of motor fuels in the US must be represented by biofuel.

into the construction of a new "gas-to-liquids" facility[2] in Port Arthur, Texas.  Ryze Capital wanted RB Products to act as a Texas-based subject-matter expert to assist Ryze Capital in performing due diligence for the investment, and also wanted RB Products to assist with securing (i) the contractors that would build the facility as well as (ii) the necessary supplier/customer contracts that would ultimately determine the success of the project.

21.    In November 2015, to facilitate the parties' discussions regarding the gas-to-liquids project, Ryze Capital and RB Products entered into a Mutual Non-Disclosure Agreement (the "Ryze-RB Confidentiality Agreement") that protected the confidentiality of information shared between the parties.  The Ryze-RB Confidentiality Agreement required each party to "hold all Confidential Information in strict confidence and...not [to] disclose or use any Confidential Information except as permitted by this Agreement."  The Ryze-RB Confidentiality Agreement broadly defined "Confidential Information" as:

> [A]ll information and any idea in whatever form, tangible or intangible, disclosed (whether previously or hereafter) to a Party or its Representatives (the "Receiving Party") by another Party or its Representatives (the "Disclosing Party"), pertaining in any manner to the business of the Disclosing Party or the Disclosing Party's Affiliates whether in written, oral, encoded, graphic, magnetic, electronic or in any other tangible or intangible form, whether of a technical, business or other nature, and whether or not labeled as confidential by the Disclosing Party or otherwise provided by the Disclosing Party.  "Confidential Information" includes, without limitation, the following:  (a) schematics, techniques, employee suggestions, development tools and processes, computer printouts, computer programs and software, source codes, object codes, algorithms, design drawings and manuals, improvements, and "know how"; (b) information about costs, profits, marketing and sales, pricing of insurance policies, funding arrangements, collateral structuring to satisfy carrier requirements, client and contact lists, contracts and other business relations with third parties, financial information, operational procedures, analytic techniques and processes; (c) the existence, status and content of discussions between the Parties and the existence or terms and conditions of the Agreement; (d) plans for future development and new business plans and product concepts; and (e) all documents, books, papers, drawings,

---

[2] A gas-to-liquids facility is a facility that transforms natural gas into liquid-fuel products, such as gasoline, diesel, and jet fuel.

COMPLAINT

models, sketches, and other data of any kind and description, including electronic data recorded or retrieved by any means, that have been or will be given to the Receiving Party by the Disclosing Party, as well as written or verbal instructions or comments.

Importantly, the Ryze-RB Products Confidentiality Agreement did not limit the definition of confidential information to any particular subject matter – instead, all information and any idea relating to the parties' businesses was to be kept confidential.

22.    After several months of due diligence, and due to issues with the scalability of Ryze Capital's licensed technology, Ryze Capital determined that the gas-to-liquids facility in Port Arthur would not be profitable and decided not to pursue the investment.  Ryze Capital instructed RB Products to be on the lookout for other potential opportunities for Ryze Capital and RB Products to partner up.

**B.    RB Products Introduces Ryze Capital to a New Investment Opportunity in Jackson, Mississippi.**

23.    In tandem with the discussion surrounding the Port Arthur project and with the parties' Confidentiality Agreement still in place, RB Products informed Ryze Capital of another investment opportunity that RB Products knew of.  Jaxon Energy, L.L.C. ("Jaxon Energy") owned a hydrotreater refinery in Jackson, Mississippi (the "Jaxon Energy Facility") that it wanted to re-purpose into a more lucrative facility – perhaps a polyalphaolephin-manufacturing[3] facility – but for which it lacked the necessary capital.  Jaxon Energy was partially owned by Randy Soule ("Soule").   Soule is also the owner of Encore, a company that constructs petrochemical facilities.  RB Products had learned of the investment opportunity through Ed Smith, one of RB Products' biggest customers, who was the other part-owner of Jaxon Energy.

---

[3] Polyalphaolephin is a synthetic oil used in automotive and industrial lubricants.

24.     Ryze Capital was extremely interested in the deal and, based on RB Products' introduction, began performing due diligence regarding a potential investment into the Jaxon Energy Facility.

25.     During the parties' due diligence in or around January 2016, and due to its specialization in HDRDs, RB Products advocated that the parties should re-purpose the Jaxon Energy Facility into an HDRD-manufacturing plant instead of a polyalphaolephin-manufacturing facility.   RB Products carefully explained to Soule and to Ryze Capital the process for manufacturing HDRDs, the process-technology information, the tax credits and RIN credits associated with HDRDs, as well as financial pro formas that RB Products had created regarding the operation of the Jaxon Energy Facility as an HDRD-manufacturing facility.  These financial pro formas – which were based on RB Products' years of experience in the renewable-fuels industry – included a compilation of historical HDRD-relevant data, such as RIN values, available tax credits, fixed costs and variable costs associated with HDRD manufacturing, including feedstock cost, and HDRD-sale value, none of which is generally available to the public.  RB Products introduced Soule and Ryze Capital to Process Dynamics,[4] a small Arkansas-based company that (i) could conduct small-scale pilot studies to develop operating parameters for large-scale HDRD manufacturing, and (ii) owned a patented process that could be used to manufacture HDRDs.   From its prior dealings with Process Dynamics, RB Products knew that Process Dynamics was willing to license its intellectual property at a substantially

---

[4] Process Dynamics did not publicly advertise or market these services.  Until that point, Process Dynamics had been primarily engaged in research development and would only license its intellectual property to large petrochemical companies like DuPont with whom it had previously done so.

lower cost (nearly 50% lower) than other existing process-technology licensors in the petrochemical industry, such as Honeywell UOP and Haldor Tapsoe.[5]

26.     Eventually, both Soule and Ryze Capital agreed with RB Products, and decided that the Jaxon Energy Facility should be re-purposed into an HDRD-manufacturing facility.

**C.     RB Products, Ryze Capital, and Soule Agree to form "NewCo," a Large Scale HDRD Manufacturing Facility in Reno, Nevada.**

27.     In early 2016, and in parallel with the parties' discussions regarding the Jaxon Energy Facility,[6] Ryze Capital, RB Products, and Soule also began discussing the re-purposing of a petrochemical terminal located in Reno, Nevada (the "Reno Facility"). Provided that they could obtain the necessary capital, the parties could re-purpose that facility – which was already owned by Soule's company Encore – into the United States' largest HDRD-manufacturing facility.  The parties agreed that the Reno Facility would have three participants:  (i) Ryze Capital, which would procure the required financing; (ii) RB Products, which would provide the industry expertise and know-how regarding the manufacture of HDRDs, the California Low Carbon Fuel Standard program, and the generation of RINs and tax credits; and (iii) Encore/Soule, which would supply the project site and construct the processing facility necessary to manufacture the HDRDs.   The parties also reached agreements in early February 2016 regarding their ownership percentages in "NewCo," which, at that point, had not yet been formed.   According to the parties' agreement, Ryze would own 10% of NewCo, and RB Products and Encore would each own 45% of NewCo.  On February 8, 2016, Soule emailed the parties an organizational chart confirming the parties' agreement.  This organizational chart also

---

[5] Ultimately, to convert feedstock into HDRD, a manufacturer would need to utilize a process that, absent a license, would invariably infringe upon a patent.  Thus, it would be necessary for an HDRD manufacturer to obtain a license to use intellectual property at the outset.

[6] The parties' discussions concerning the Jaxon Energy Facility and the Reno Facility overlapped significantly, and all information shared furthered both projects.

confirmed that Ray Rice, Jr. – RB Products' owner and president – would act as the CEO for NewCo.

28.     Through the first half of 2016, RB Products devoted hundreds of man-hours to providing the joint venture with the information necessary to carry out what would eventually become Ryze Renewable's HDRD-manufacturing business.  RB Products shared the intimate details of the HDRD manufacturing process and business model, including, but not limited to: (i) process for manufacturing HDRDs from feedstock oil, including the necessary equipment, facility layout, and operating parameters; (ii) the process for generating RINs and tax credits based on the manufacturing of HDRD and compliance with the California Low Carbon Fuel Standard program; (iii) the business model for marketing those RINs to other entities that are required to buy and retire RINs; and (iv) the target suppliers and customers for HDRDs.  For example, RB Products disclosed to Ryze Capital and Encore/Soule the "pathway" for producing HDRDs that complied with California's Low Carbon Fuel Standard, including the required feed stock, feed stock process, supply location, mode of transportation of HDRDs to California, and type of processing plant.  RB Products also explained the need for NewCo to utilize a special variant of "distiller's corn oil" for use as feedstock for the HDRDs.  The detailed information that RB Products shared is not in the public domain, nor is it readily ascertainable.

29.     Based on the detailed, confidential, and proprietary information that RB Products supplied, Ryze developed a confidential information memorandum ("Confidential Information Memorandum") that Ryze used as a prospectus to procure $80 million in long-term debt financing from lenders.  The Confidential Information Memorandum – which was marked on each page with the work "confidential" – contained detailed information regarding the HDRD manufacturing process, including the "process flow," the economics associated with the manufacture of HDRDs, and the identity of target suppliers and customers for the company's HDRD product.  The Confidential Information Memorandum also included several pages of

COMPLAINT

1  detailed pro formas that were based on the financial pro formas that RB Products had previously
2  supplied to Ryze and Encore/Soule.

3          30.     Additionally, the Confidential Information Memorandum confirmed the parties'
4  agreement as to the ownership of Newco, and stated Ryze Renewables, L.L.C., the chosen name
5  of NewCo, is "[a] project by Ryze Capital **[and] RB Products**," and further stated that "Ryze
6  Capital Partners, LLC **and RB Products, Inc.** have formed Ryze Renewables, L.L.C."
7  (emphasis added).
8

9          31.     Throughout February, March, and April 2016, RB Products continued feeding
10  Ryze and Soule with the vital, trade-secret information necessary to get NewCo up, running, and
11  funded. During this time, RB Products continued refining the Confidential Information
12  Memorandum with additional, detailed information concerning the HDRD manufacturing
13  process, RIN program, and industry.  At its own expense, RB Products also roped in Weaver, a
14  third-party consulting firm, to provide some additional insight into specific questions that Ryze
15  Capital had regarding the manufacture of HDRDs.
16

17          32.     Additionally, in April 2016, Ryze Capital – to make NewCo more appealing for
18  debt lenders – sought and obtained insurance to protect NewCo and its lenders in the event that
19  subsequent legislation eliminated or negatively affected the RIN market or IRS tax credits for
20  renewable-fuel businesses.  Just like always, and to secure the insurance, Ryze Capital used RB
21  Products as the subject-matter expert regarding the RIN generation, NewCo's qualification for
22  RIN generation, and the circumstances in which legislation or political events would negatively
23  impact RIN credits such that an insurer would be required to pay a claim.  Ryze Capital – based
24  on the information shared by RB Products – successfully procured the insurance.
25

26          33.     RB Products also continued introducing Ryze Capital and Soule to potential
27  customers and clients, including POET, a supplier of "distiller's corn oil" that would act as the
28  feedstock that NewCo would convert into HDRDs.   Indeed, POET even executed a non-binding

letter of intent *with RB Products* for the supply of 2,000 barrels of distiller's corn oil to the Reno Facility.

34.     Around June 2016, Ryze Capital – due mainly to RB Products – had the necessary information and tools to acquire the $80 million in debt financing required to re-purpose the Reno Facility.  Ryze and Encore/Soule represented to RB Products that the venture was now "on hold" until it could secure financing.

**D.     Ryze and Encore/Soule Secretly Cut RB Products Out of NewCo.**

35.     Months went by – and then even a year – and both Ryze and Encore/Soule continued to tell RB Products that they had *still* been unable to secure funding and that the project was still on hold.

36.     Both Ryze and Encore/Soule were actually lying to RB Products.  In fact, in June 2016 – the same time that Ryze was telling RB Products that the venture was still trying to procure financing – Ryze and Encore/Soule decided that they no longer needed RB Products and decided to pursue Ryze Renewables, L.L.C. on their own.

37.     Upon information and belief, in or around early summer 2016, Ryze and Encore/Soule took the Confidential Information Memorandum, removed any reference to RB Products or Ray Rice, RB's principal, and began shopping for financing.  In August 2016, using RB Products' information, Ryze and Encore/Soule obtained an $84 million loan from the Greater Nevada Credit Union for Ryze Renewables, which was backed by a $67.2 million guarantee from the United States Department of Agriculture.  Ryze Capital and Encore/Soule, without telling RB Products, also officially formed Ryze Renewables, L.L.C. in September 2016.

38.     One year later, in August 2017, RB Products – much to its shock and surprise – read an article on BioFuels Digest concerning Ryze Renewables' procurement of the $84 million loan to construct the HDRD facility.  That same month, Biofuels Digest also wrote an article exclaiming "amaz[ment]" that Ryze Renewables had – through Ryze Capital and Encore/Soule –

publicly filed confidential information concerning the manufacture of HDRDs that had eluded participants in the biofuel industry for years.  When RB Products emailed Soule about the article, Soule feigned ignorance and claimed that: "the only thing true is [that the project is] all in the planning stages and may or may never happen."  Of course, as is now apparent, Soule was clearly lying:  at that time, Ryze Renewables had already begun construction of the Reno[7] Facility using the $84 million loan it obtained from the Greater Nevada Credit Union.  According to its website, Ryze Renewables is also in the process of constructing a Las Vegas facility that also manufactures HDRDs, ostensibly using the same funds and information that it used to construct the Reno Facility.[8]

### III.

### CLAIMS AGAINST DEFENDANT

### FIRST CLAIM
**(Misappropriation of Trade Secrets under Federal Defendant Trade Secrets Act and Uniform Trade Secrets Act, Against All Defendants)**

39.      RB Products incorporates the above factual allegations by reference herein.

40.      This claim arises under the Defend Trade Secrets Acts "DTSA," 18 U.S.C. §1836(b) and applicable state Uniform Trade Secrets Act.

41.      RB Products has numerous, valuable trade-secrets relating to the manufacture of HDRDs.  These trade secrets include, but are not limited to, the process by which HDRDs are manufactured, the materials needed for the manufacture of HDRDs, the process by which to earn

---

[7] According to an organizational chart submitted to Nevada's governmental agency (which was then published in the BioFuel Digest article, Ryze Capital and "RESC, L.L.C."—a company owned and controlled by Randy Soule—are 50%/50% owners of "Ryze Renewables, L.L.C.," which in turn is the 100% owner of Ryze Renewables Reno, L.L.C.   Upon information and belief, Ryze Renewables, L.L.C. is also the 100% owner of Ryze Renewables Las Vegas, L.L.C.

[8] https://www.ryzerenewables.com/facilities.html (stating that Ryze Renewables has two locations:  one in Reno, and one in Las Vegas).

RINs and tax credits from the manufacture of HDRDs, methods of obtaining EPA certification, the licensing necessary for the intellectual property for the HDRD manufacturing, financials and pro formas concerning the manufacturing of HDRDs, and the identity of potential customers and suppliers for HDRD businesses.

42.     HDRDs are a nascent business in the United States and RB Products' trade-secret information is not generally known to, and not readily ascertainable through, proper means in the public domain.  Indeed, as published in BioFuels Digests, participants in the biofuel industry "have been clamoring for years to have an intimate look at how [HDRD] projects are described, costed, financed, and detailed for public authorities...this information [concerning Ryze Renewables, L.L.C.] formed a goldmine of valuable information for [Biofuel Digest] readers worldwide."   This article was describing the information that RB Products disclosed to Defendants regarding the manufacture of HDRDs.  Indeed, the fact that Ryze and Encore/Soule agreed to give RB Products 45% ownership of Ryze Renewables, L.L.C. demonstrates just how vital RB Products' information was.

43.     Even Defendants acknowledged the proprietary and confidential nature of the information concerning Ryze Renewables.  Not only was the Confidential Information Memorandum clearly marked "confidential," but Ryze Capital wrote to the Nevada's Governor's Office of Economic Development in a September 9, 2016 letter and requested that all of the information submitted to the government concerning Ryze Renewables "be kept confidential."

44.     Defendants misappropriated RB Products' trade secrets by improper means by using its trade-secret information to (i) obtain nearly $100 million in financing for Ryze Renewables, L.L.C., and (ii) to construct and operate more than one HDRD manufacturing facility.  Further, Defendants misappropriated RB Products' trade secrets because they knew that RB Products had disclosed that information under circumstances giving rise to a duty to maintain

the secrecy of the trade secrets – the furtherance of the parties' collective participation in Ryze Renewables, L.L.C.

45.     As a result of Defendants' joint and several wrongful conduct, RB Products has been damaged.   Defendants' conduct was willful and malicious, entitling RB Products to exemplary damages.

46.     Defendants' conduct has caused irreparable harm to RB Products, and such harm cannot be adequately compensated for in damages alone. RB Products, therefore, seeks a preliminary and permanent injunction.

47.     RB Products is further entitled to its attorneys' fees in the prosecution of this matter.

**SECOND CLAIM**
**(Breach of Contract Against Ryze and Encore)**

48.     RB Products incorporates the above factual allegations by reference herein.

49.     RB Products, Ryze, and Encore had an agreement that RB Products would own 45% of "Newco," which was eventually formed as Ryze Renewables, L.L.C.

50.     Ryze and Encore breached the parties' agreement by cutting RB Products out of NewCo's ownership, and instead distributing RB Products' ownership to themselves.

51.     As a result of Defendants' breach, RB Products has been damaged.

52.     Because RB Products' ownership interest in "Newco" is unique and cannot be adequately compensated for in damages alone, RB Products has suffered, and continues to suffer, irreparable harm, entitling it to preliminary and permanent injunctive relief.

53.     Additionally, RB Products had entered into written confidentiality agreements with Ryze, pursuant to which Ryze was obligated to maintain the secrecy of RB Products' information.

54.     Ryze breached its obligations under the written confidentiality agreement by taking and using RB Products' trade-secret information despite secretly cutting RB Products out of any ownership in Ryze Renewables, L.L.C.

55.     RB Products is entitled to its attorney's fees in connection with this claim.

<u>**THIRD CLAIM**</u>
**(Fraud Against Ryze, Encore, and Soule)**

56.     RB Products incorporates the above factual allegations by reference herein.

57.     Upon information and belief, at the time that Defendants promised to give RB Products a 45% ownership interest in Ryze Renewables, L.L.C, Defendants had no intention to perform that promise, thereby constituting an actionable misrepresentation.

58.     Defendants' lack of intention to perform at the time they made their promise is established by their conduct.  Only months after Defendants promised to give RB Products a 45% interest in Ryze Renewables – and only days after RB Products had finished providing the venture with vital information needed to obtain financing – Defendants, in June 2016, took the Confidential Information Memorandum, stripped out RB Products' name, and began seeking financing.  Meanwhile, Defendants purposely misled RB Products by telling RB Products that the project was on "hold" until financing could be obtained, even though the funding had already been obtained.  Indeed, even in June 2017 – nearly a year after Defendants successfully obtained over $80 million in funding for Ryze Renewables, L.L.C. – Defendant Soule falsely represented to RB Products that the project was still in the "planning stages" and may "never happen."

59.     The timing of Defendants' actions in cutting RB Products out of Ryze Renewables, L.L.C., and in lying to RB Products about the project being "on hold" while actively moving forward with seeking and obtaining financing, establishes that Defendants always planned to cut RB Products out of the project after bleeding it dry for its trade secrets, subject-matter expertise, and industry knowledge and contacts.

60.     Defendants made their false representations concerning their lack of intention to perform in order to induce RB Products to provide its trade secrets, subject-matter expertise, and industry knowledge and contacts in furtherance of Ryze Renewables, L.L.C.  RB Products in fact justifiably and reasonably relied on Defendants' representations, as RB Products never would have shared all of its information had it known that Defendants were going to cut it out of Ryze Renewables, L.L.C. just months later.

61.     As a result of Defendants' fraud, RB Products has been damaged in the amount of its 45% interest that it was promised in Ryze Renewables, L.L.C. and/or any other entities Defendants formed utilizing RB Products' trade secrets.

## FOURTH CLAIM
### (Breach of Fiduciary Duty Against Ryze and Encore)

62.     RB Products incorporates the above factual allegations by reference herein.

63.     RB Products, Encore, and Ryze Capital entered into a joint venture with regard to the formation and operation of Ryze Renewables, L.L.C.  Because the parties reached agreements concerning their ownership percentages in Ryze Renewables – including an agreement that RB Products would own a 45% interest in Ryze Renewables – the parties necessarily came to an agreement concerning the sharing of losses and profits with respect to Ryze Renewables.

64.     As participants in the joint venture, Encore and Ryze Capital owed RB Products a fiduciary duty.  By committing the wrongful actions described above – namely, in stealing RB Products' trade secrets, defrauding RB Products, and in cutting RB Products out of Ryze Renewables, Defendants breached their fiduciary duties to RB Products.

65.     As a result of Defendants' breach of fiduciary duty, RB Products has been damaged.

/ / /

## FIFTH CLAIM
### (Participation in Breach of Fiduciary Duty and Fraud Against Defendants)

66.     Plaintiff incorporates the above factual allegations by reference herein.

67.     Ryze Capital, L.L.C., Encore DEC, L.L.C., Ryze Renewables, L.L.C., Ryze Renewables Reno, L.L.C., RESC, L.L.C., Michael Brown, Chris Dancy, Ryze Renewables Las Vegas, L.L.C., Matt Pearson, and Randy Soule aided, abetted, assisted, encouraged, and/or directly participated in Ryze and Encore's breaches of fiduciary duty and fraud.

68.     Michael Brown is the managing director and principal of Ryze.  He was intimately involved the in the meetings, conversations, and emails that took place between RB Products, Ryze, and Encore/Soule from late 2015 through summer 2016 during which the parties reached agreements concerning their ownership in Ryze Renewables and in which RB Products disclosed its trade secrets.  As Ryze's managing director, any decision that Ryze made to cut RB Products out from the venture and to use its trade secrets must have been made, in part, by Brown.

69.     Chris Dancy is the senior vice president of Ryze.  Like Michael Brown, Dancy was intimately involved the in the meetings, conversations, and emails that took place between RB Products, Ryze, and Encore/Soule from late 2015 through summer 2016 during which the parties reached agreements concerning their ownership in Ryze Renewables and in which RB Products disclosed its trade secrets.  As senior vice president, any decision that Ryze made to cut RB Products out from the venture and to use its trade secrets must have been made, in part, by Dancy.

70.     Matt Pearson is another managing director and principal of Ryze, and has become a manager of the Ryze Renewbles entities, including Ryze Renewables Las Vegas and Ryze Renewables Reno.  Like Brown and Dancy, Pearson was intimately involved the in the meetings, conversations, and emails that took place between RB Products, Ryze, and Encore/Soule from

late 2015 through summer 2016 during which the parties reached agreements concerning their ownership in Ryze Renewables and in which RB Products disclosed its trade secrets. Additionally, Pearson signed and certified the documents that Ryze submitted to the Nevada government to obtain loan guarantees and other economic incentives from Nevada, including a Sales and Tax Abatement, Modified Business Tax Abatement, Personal Property Tax Abatement, and Recycling Real Property Abatement.  Pearson also submitted the September 9, 2016 letter to the Nevada Governor's Office of Economic Development requesting that the office keep Ryze Renewable's materials "confidential."  As Ryze's managing director, any decision that Ryze made to cut RB Products out from the venture and to use its trade secrets must have been made, in part, by Pearson.  Pearson was also the person that was actively using RB Products' information in submissions to the Nevada government.

71.     By their wrongful actions, these Defendants have caused damages to RB Products.

72.     By their wrongful actions, these Defendants also continue to cause irreparable harm to RB Products, which is not compensable in damages. Therefore, RB Products is entitled to a preliminary and permanent injunction against Defendants.

## SIXTH CLAIM
### (Declaratory Judgment)

73.     Plaintiff incorporates the above factual allegations by reference herein.

74.     Plaintiff is entitled to a judicial declaration of its rights, status, and other legal relations with respect to its contracts with Defendants.

75.     Specifically, RB Products is entitled to a judicial declaration that it is a 45% owner of Ryze Renewables, L.L.C.

76.     Further, RB Products is entitled to a judicial declaration that it is a 45% owner of any company Defendants formed by utilizing RB Products trade secrets, industry expertise, knowledge, and/or know-how.

77.     RB Products is entitled to its reasonable and necessary attorney's fees in connection with this matter pursuant to 28 U.S.C. §2201.

**IV.**

**PUNITIVE DAMAGES**

78.     Given Defendants' willful, oppressive, fraudulent, and malicious conduct, RB Products is entitled to an award of punitive damages against them.

**V.**

**CONDITIONS PRECEDENT**

79.     All conditions precedent have been performed or have occurred.

**VI.**

**CONCLUSION**

80.     Plaintiff prays that Defendants be commanded to appear and answer, and that Plaintiff have and recover the following from them:

a.      A preliminary injunction against Defendants' wrongful conduct;

b.      A permanent injunction against Defendants' wrongful conduct;

c.      Specific performance in the form of assignments of equity ownership in any companies Defendants formed by excluding RB Products;

d.      Actual, compensatory damages to compensate RB Products for the damages and harm it sustained in the past and future;

e.      Punitive damages under the DTSA, UTSA, breaches of fiduciary duty, and fraud;

f.      Attorney's fees and costs;

g.      A judicial declaration of its rights; and

COMPLAINT

h.     Any and all other relief RB Products may be entitled to at law or in equity.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 20, 2019                    **ALDRICH LAW FIRM, LTD.**

/s/ John P. Aldrich
John P. Aldrich, Esq.
Nevada Bar No. 6877
Catherine Hernandez, Esq.
Nevada Bar No. 8410
7866 West Sahara Avenue
Las Vegas, NV  89117
Tel (702) 853-5490
Fax (702) 227-1975
jaldrich@aldrichlawfirm.com

Ashish Mahendru *(pro hac to be submitted)*
Darren A. Braun *(pro hac to be submitted)*
**MAHENDRU, P.C.**
639 Heights Blvd.
Houston, Texas  77007
Telephone: 713-571-1519
Facsimile: 713-651-0776
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

*Attorneys for Plaintiff*

COMPLAINT